```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

MARJORIE JOAN DONAHOE,          )
                                )
            Plaintiff,          )    CIVIL ACTION NO.
                                )    1:18-CV-10230-DPW
v.                              )
                                )
MAGGIANO'S HOLDING              )
CORPORATION, D/B/A MAGGIANO'S   )
LITTLE ITALY RESTAURANT,        )
                                )
            Defendant.          )
```

MEMORANDUM AND ORDER
February 13, 2020

Plaintiff Marjorie Joan Donahoe was injured when she left a restaurant through its revolving door. She sued for negligence in state court. Defendant Maggiano's Holding Corporation ("Maggiano's") removed the matter to this Court on the basis of diversity jurisdiction and following discovery has moved for summary judgment. I will grant that motion after finding as a matter of law that Ms. Donahoe cannot establish that Maggiano's caused her injury.

## I. BACKGROUND

The incident occurred when Ms. Donahoe was at Maggiano's Little Italy Restaurant on Columbus Avenue in Boston to have dinner with several members of her family for her 75th birthday. After dinner, she sought to leave the restaurant through a revolving door. A sign on a nearby door instructed patrons to use the revolving door.

When she went through the revolving door, Ms. Donahoe fell onto the sidewalk outside of the restaurant. The cause of this fall is in dispute. Maggiano's contends that causation cannot be assigned to it. By contrast, Ms. Donahoe contends that Maggiano's revolving door was defective. Her sole basis for this contention is a purported expert report.

Ms. Donahoe has submitted a purported expert report from Michael Panish, a building contractor who says he has been retained in some 1,300 cases. Mr. Panish writes that the American National Standards Institute ("ANSI") "strongly recommend[s] that all revolving door mechanisms be inspected by a professional service provider at least annually and the door be maintained and inspected for function on a regular basis per manufacturers instruction. This is considered the best industry practices." ANSI requires doors like the one at Maggiano's to have a rotational limit of 12 revolutions per minute.

Mr. Panish tested the door at Maggiano's in July, 2018. He found the door to be in compliance with the rotational requirement. Nevertheless, he asserted that, because the door pushed on Ms. Donahoe's back, sending her out onto the sidewalk, "it is more probable than not that the condition of the subject doorway, and the potential rotational limited speed of the mechanism exceeded the ANSI requirement, and at the time of the incident was different than at the time of my site inspection."

Additionally, Mr. Panish wrote that, based on the force required by ANSI to stop the revolving door from revolving, "[i]t is more probable than not that the plaintiff would have been able to overcome and withstand that level of force if the braking adjustment was properly functioning and or adjusted per the above referenced ANSI standard." Mr. Panish made this statement without any discussion of Ms. Donahoe's age or physical strength.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" issue is one where a reasonable factfinder could find in favor of either party. *Borges ex rel. S.M.B.W.* v. *Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010). A "material" fact is one whose "existence or nonexistence has the potential to change the outcome of the suit." *Id.* at 5. In ruling on a motion for summary judgment, I make all reasonable inferences from the admissible evidence in the light most favorable to the non-moving party—here, Ms. Donahoe—and grant summary judgment if no reasonable jury could find for her. *Fithian* v. *Reed*, 204 F.3d 306, 308 (1st Cir. 2000).

Because this is a diversity case, I apply state substantive law and federal procedural law. *Erie R. Co.* v. *Tompkins,* 304

3

U.S. 64, 78 (1938). I will apply Massachusetts state law to the substantive questions of negligence and federal law to the question whether the expert report is admissible. *See Ruiz-Troche* v. *Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 80 (1st Cir. 1998)(applying Rule 702 of the Federal Rules of Evidence in diversity case); *McGovern ex rel. McGovern* v. *Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 422 (D. Mass. 2008)(same).

### III. ANALYSIS

Under Massachusetts law, "[t]o prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Stewart* v. *Five Bridge Inn, LLC*, No. 14-P-1878, 2015 WL 8519517, at *1 (Mass. App. Ct. Dec. 10, 2015). Maggiano's owed Ms. Donahoe a duty to make reasonable efforts to keep the restaurant premises in a safe condition. *Allen* v. *Albert Zallen Co.*, 165 N.E.2d 403, 404 (Mass. 1960). A reasonable jury might find that Maggiano's breached that duty by failing to inspect the revolving door regularly. The question of causation, however, is more complex.

The parties dispute both the mechanics of Ms. Donahoe's injury and whether the revolving door was functioning properly

4

at the time of the injury.  Ms. Donahoe's expert report is founded on the contention that Maggiano's breached its duty of care in maintaining the door, resulting in a malfunction, and causing Ms. Donahoe's injury.

*A.  Cause of Injury*

The only admissible evidence about the unfolding of the incident is that a child got into another segment of the revolving door and pushed it so hard that it hit Ms. Donahoe. Although she admitted as much soon after the incident, Ms. Donahoe now denies that someone was pushing the door.  She argues, however, that even if someone was, she would not have been ejected if the door were functioning properly.  Ms. Donahoe contends that "by arguing that another party is somehow pushing the door and causing Ms. Donahoe's injury, the Defendant has adopted the position that its revolving door was defective."

The evidence supporting the contention that another person was pushing on the revolving door can be marshalled as follows. First, Ms. Donahoe's grandson testified that he observed a little girl pushing the door while Ms. Donahoe walked through it, and that Ms. Donahoe told him the day after the incident that this is what happened.  Second, Ms. Donahoe's granddaughter Grace testified that Ms. Donahoe told her after the incident that she fell because a little girl was pushing the door while Ms. Donahoe was walking through it.  Third, Ms. Donahoe's

5

medical records generated immediately after the incident state that she "reports she was leaving a restaurant through a revolving door and another person went through the otherside of the revolving door at a rapid pace launching pt out onto sidewalk."[1]

In her deposition, however, Ms. Donahoe testified that she was "definitely confident" that she was "the only one" in the revolving door, although "[i]t was very dark in there" and she "did not" look behind her or otherwise check to see if she was alone in the door.  She testified that she did not touch the door, but that as soon as she stepped into a partition in the door, the partition hit her in the back.  She further testified that when she was at the hospital after the incident,

> everybody was asking me and they said, "Somebody must have pushed that door," and I don't know who that—people were asking me, even people that worked there, "Well, how did this happen," and they assumed, whoever was questioning it, that somebody pushed the door.  So that's where that idea came—not idea, but that's where that thought came from.  No, I never saw anybody get in to the… the door, no.

She admitted that she "might have said" that somebody pushed the door from behind her, but "somebody put that idea into my head."

---

[1] At the hearing on this matter I found that totem pole hearsay in a Maggiano's guest incident report was inadmissible. Further, I noted that since the motion turns on the question whether Maggiano's is responsible, the apparent dispute referenced by the guest incident report over whether Ms. Donahoe was pushed, tripped, or some amalgam of both by someone not affiliated with Maggiano's was not material to resolution of the motion on the current record.

Ms. Donahoe also contends that her "grandchildren may have created their stories to help them understand how she was injured."

The admissible evidence of how the door came to strike Ms. Donahoe is the grandson's observation that a little girl was pushing the door and her admissions immediately thereafter. At its best, Ms. Donahoe's later testimony asserts her absence of observation; she says she did not look to see whether there was anyone else in the door. Her testimony is fundamentally speculative. Opinion testimony that is not "rationally based on the witness's perception" is inadmissible under Federal Rule of Evidence 701(a). A lay witness's testimony must be based on what she herself observed and must not require the witness to make any "irrational leaps of logic." *Lynch* v. *City of Bos.*, 180 F.3d 1, 16 (1st Cir. 1999). *See also Keller* v. *United States*, 38 F.3d 16, 31 (1st Cir. 1994)(finding no abuse of discretion where trial judge did not admit an eyewitness's deposition testimony that the plaintiff hit his head prior to a fall because the eyewitness did not see him strike his head or testify to "*any* other sensory perception from which one might rationally infer such an impact"). Ms. Donahoe's testimony that there was no one else in the door is not based on sensory perception. I therefore find Ms. Donahoe's statement that there was no one in the door inadmissible.

## B.  Door's Functionality

Ultimately, however, regardless of whether a child pushed the door or not, Ms. Donahoe cannot prove that some malfunction in the door's operation can be said to be the proximate cause of the incident.

In his expert report, Mr. Panish tendered the conclusion that "[i]t is more probable than not that the plaintiff would have been able to overcome and withstand that level of force if the braking adjustment was properly functioning and or adjusted per the above referenced ANSI standard."  He writes that the best industry practice is for these doors to be inspected at least annually, and that "[i]t is more probable than not that the plaintiff was pushed from behind with greater resistance due to lack of appropriate maintenance and annual inspection."  With respect to the regular inspection, Yolandi Arundel, Maggiano's General Manager, testified that the door had not been inspected in at least 7 years as of the date of her deposition in July, 2018.

However, Mr. Panish came to inspect the door three and a half years *after* the incident and found it to be working properly.  Although he tried, he was "unable to get the movement of the door to exceed the maximum allowable requirement."  There is no evidence that the door was fixed or adjusted between the time of the incident and the time of Mr. Panish's inspection.

8

Ms. Donahoe suggests the fact that Maggiano's didn't inspect the door for "nineteen years of operation" is evidence of negligence. But Ms. Arundel testified that the door has never been evaluated for safety during her tenure, which began before this incident and continued as of the date of her July 26, 2018 deposition. She specifically testified that the door was not tested after the incident with Ms. Donahoe. Thus, Mr. Panish's opinion requires accepting the perverse and speculative proposition that a door that was properly functioning at the only time it was examined, three years after the incident, came into compliance of its own accord after some undocumented period of non-compliance that included the date of the incident.

Mr. Panish's conclusions about the probability that the door was malfunctioning at the time of the incident are based solely on an unsupported *res ipsa loquitur* assertion that, if the door were working properly, it would not have expelled Ms. Donahoe in the way that she testifies it did. But "[r]es ipsa *loquitur* is no substitute for the lack of evidence of the defendant's negligence." *Ide* v. *Foreign Candy Co.*, 2006 Mass. App. Div. 165, 167 (Mass. App. Div. 2006).

I find the majority of Mr. Panish's report inadmissible under Fed. R. Evid. 702. Under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but

reliable." *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). In other words, a trial judge must "screen out of the trial process 'expertise that is *fausse* and science that is junky.'" *Smith* v. *Gen. Elec. Co.*, No. CIV.A.91-12912-RGS, 2004 WL 870832, at *2 (D. Mass. Apr. 23, 2004) *quoting Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137, 159 (1999) (Scalia, J., concurring). An expert's opinion should be admitted only if it is likely to "assist the trier of fact to understand or determine a fact in issue." *Smith*, 2004 WL 870832, at *3, *quoting Ruiz-Troche,* 161 F.3d at 81. Mr. Panish's opinion would not.

That Mr. Panish's ultimate opinion is at best junk science relying on exegesis by assertion can be seen by a more granular evaluation of the claims in his expert report.

1. <u>Rotational Speed at Time of Inspection</u>

Mr. Panish used the ANSI standards and the size of the revolving door to determine how many times the door should be able to revolve in a minute in order to be ANSI compliant. He found that, because "the measured drum was approximately 6 feet in diameter, the correct rotational limit should have been no more than 12 revolutions per minute (ANSI A 156.27 section 4.2.)." He tried to push the door hard enough that it would revolve more than 12 times per minute, and was unable to. He

10

then determined that, at the time of his inspection, the door was ANSI compliant.

Mr. Panish's conclusion that the door was compliant at the time of his inspection is not in dispute. Mr. Panish tested his theory or technique. *See Daubert*, 509 U.S. at 593. His methodology could be repeated. Narrowly conceived, that conclusion is rational, based on observable facts, and reflects valid engineering principles. It is the only part of his expert report that is arguably reliable and admissible.

2. The Wind Blew the Door

However, Mr. Panish next pulls out of the air an unsupported conclusion that the wind blew the door, causing it to eject Ms. Donahoe forcefully. Mr. Panish does not merely offer this as a speculative possibility. Rather, he writes, "It is more probable than not that… the ambient conditions pertaining to wind allowed the door wing to act as a sail pushing the door against the plaintiff as she exited the restaurant." I see nothing in the record to ballast this conclusion and I find it inadmissible. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Maciel* v. *Thomas J. Hastings Props., Inc.*, No. CV 10-12167-JCB, 2012 WL 13047595, at *3 (D. Mass. Nov. 30, 2012) *quoting Gen. Elec. Co.* v. *Joiner*,

11

522 U.S. 136, 146 (1997). I may not rely on an opinion with no scientific or evidentiary foundation.

### 3. The Braking Mechanism was Broken

Next, Mr. Panish opines that the braking mechanism was not working properly at the time of the incident. His support for this conclusion is solely that the door was not regularly inspected. But he did not tie this conclusion to any pertinent observations, except for the conclusory observation that Ms. Donahoe would not have been injured if the door were working properly. His theory about the braking mechanism was not tested. *See Daubert*, 509 U.S. at 593. It is fair to say that his conclusion is not based on any kind of scientific analysis or expertise at all. All that Mr. Panish provided here was his knowledge of the ANSI standards. He may be correct that Maggiano's inspection frequency of the door is "below the industry accepted best practices for revolving doors." But while that may be relevant to the question of breach of duty, it is immaterial to whether the door in fact malfunctioned. His pertinent conclusion that the braking mechanism was broken at the time of the incident is inadmissible under FRE 702 and its case law as an *ipse dixit* assertion. *See Slatkavitz* v. *Gen. Motors Corp.*, 523 F. Supp. 383, 385 (D. Mass. 1981) *quoting Swartz* v. *Gen. Motors Corp.* 378 N.E.2d 61, 65 (1978) (holding that a "verdict may not be based on conjecture and surmise, and

12

expert opinion does not help if it is demonstrated that it rests on speculation"); *cf. Stewart*, 2015 WL 8519517 (upholding summary judgment for defendant based on lack of causation where plaintiff assumed, but could not be sure, that her injury resulted from tripping over a large rock embedded in a gravel parking lot).

## C. Summary

The only admissible part of Mr. Panish's report is that the door was functioning properly at the time of his site visit. How it was functioning at some other time — specifically, when the incident occurred — is not the subject of evidence, but is confected in service of an improper *res ipsa loquitur* assertion. *See, e.g.*, *Maciel*, 2012 WL 13047595, at *3 *quoting Joiner*, 522 U.S. at 146 ("Expert testimony may be excluded if there is 'too great an analytical gap between the data and the opinion proffered.'")

Ms. Donahoe references no evidence to support her expert's contention that the door malfunctioned. Her base assertion that the door must not have been working properly is insufficient to establish causation. Even if a jury believed that she was alone in the revolving door when she was injured, there is insufficient evidence for the jury to find that Maggiano's caused that injury. Negligence cannot be established simply because there has been an accident. *See Wardwell* v. *George H.*

*Taylor Co.*, 130 N.E.2d 586, 588 (Mass. 1955). Accordingly, Massachusetts case law has carefully evaluated the underlying evidence said to support causation.

A trial judge's finding of negligence has been reversed where the evidence was simply that a door fell on a restaurant patron. *See Benzaquin* v. *Friendly Ice Cream Corp.*, 2003 Mass. App. Div. 65 (Mass. App. Div. 2003). The patron's testimony was that as the door was falling she saw that there was no pin in the door hinge. The court found that this was insufficient to establish that "a deteriorating condition would have been visible on reasonable inspection." *Id.* at 67.

Similarly, a directed verdict that there was no negligence was affirmed where the plaintiff suffered mouth and throat injuries after eating several Warheads Sour Gum balls. *See Ide*, 2006 Mass. App. Div. 165 at 165. The court found the evidence of causation to be "inadequate" because "[t]here was no evidence indicating that there was any defect in the Warheads ingested by Ide, nor was there any clear evidence that the Warheads had caused Ide's injuries." *Id.* at 167.

The Supreme Judicial Court, for its part, has rejected as speculative a causation contention involving a service manager responsible for turning off a portable electric heater every night, who did not remember turning it off on a certain Friday. *Third. Nat. Bank Trust Co.* v. *Reiter Oldsmobile, Inc.*, 277

14

N.E.2d 824 (Mass. 1972). A fire started the following Sunday, and the fire marshal's office gave the opinion that the fire started because a portable electric heater was left running and overheated. *Id.* at 825. The SJC found that because there was a "possibility that the fire resulted from a defect in the heater of which the defendant had no notice," a finding of negligence "would have rested in surmise and conjecture." *Id.*

It is clear that Ms. Donahoe was injured. It is clear that she was injured while exiting Maggiano's. Other than that, nothing is clear, although there is direct evidence a little girl pushed the door. But, Ms. Donahoe has offered no evidence to support her contention that the revolving door itself malfunctioned. Her argument is simply that she was injured, she does not know how it happened, and therefore the door must have been broken. As a matter of law, that is insufficient to prove causation. *See Slatkavitz*, 523 F. Supp. at 385 ("The key element of causation cannot be left to a jury's speculation.").

## IV. CONCLUSION

There being no basis to conclude that any breach of duty of care by Maggiano's caused injury to Ms. Donahoe, Defendant Maggiano's motion for summary judgment is GRANTED.

/s/ *Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE